UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AMERICAN PREMIER UNDERWRITERS, INC. and CONSOLIDATED RAIL CORPORATION, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) Case No. 3:14-CV-351-JD |
| v. | )<br>) |
| THE ESTATE OF ARTHUR M. CHIZUM, THE ARTHUR M. CHIZUM REVOCABLE LIVING TRUST of July 27, 1998, and RUTH E. CHIZUM, in her Capacity as Personal Representative, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**OPINION AND ORDER**

**I.   Introduction and Procedural History**

This case arises from a Consent Decree (Decree) between the Environmental Protection Agency (EPA) and the present Plaintiffs, Consolidated Rail Corporation (Conrail) and American Premier Underwriters, Inc. (APU), the successor-in-interest to ownership of Conrail. DE 4, 26-7. The Decree followed lawsuits by the EPA and the State of Indiana alleging Conrail's liability under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). 42 U.S.C. § 9607; DE 26-7 at 5-6. Under that Decree, Conrail agreed to perform significant environmental remediation. DE 26-7 at 20–29. If Conrail deviates from this cleanup plan, it faces stipulated penalties, which accrue over time until compliance is restored. *Id.* at 30-36.

Following a study mandated by the Decree, the Plaintiffs came to believe that a drag strip

owned by Arthur M. Chizum (the Property) had contributed to the contamination at issue. So, the Plaintiffs sued Chizum to recover part of their remediation costs. DE 4 at 5. While Chizum passed away after the litigation began, the Plaintiffs amended their complaint to name Chizum's Estate and Ruth E. Chizum (the Estate's representative) as defendants. DE 4-1 at 2. The parties then settled that lawsuit through a November 19, 2001 settlement agreement (the Settlement Agreement), which, among other things, permits "Conrail and APU reasonable access to the Chizum Property to perform any response action the EPA requires Conrail and APU to perform." *Id.* at 4.

The Plaintiffs now allege that Chizum's Estate and Ruth E. Chizum (the Estate's representative) have breached the Settlement Agreement by refusing to allow Plaintiffs reasonable access to the Property. According to the Plaintiffs, this has prohibited them from complying with the EPA Decree, exposing them to its stipulated penalty provision. DE 4 at 6–7. Their Complaint alleges that this amounts to a material breach of contract and seeks specific performance allowing the Plaintiffs access to the Property and a declaratory judgment articulating the Plaintiffs' right to access the Property. *Id.* at 7–10.

The Defendants responded, in part, by filing a motion to dismiss this litigation for lack of subject matter jurisdiction on November 4, 2014. They argue that this action does not belong in federal court because Plaintiffs do not meet the $75,000 amount in controversy requirement for diversity jurisdiction under 28 U.S.C. 1332(a). DE 22. Defendants do not challenge the diversity of the parties.

## II. Standard of Review

In analyzing a motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true all well-pled factual allegations and must draw all reasonable inferences in favor of the Plaintiffs. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). However, the Plaintiffs bear the burden of establishing that subject matter jurisdiction is proper. *Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003); *Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 425 (7th Cir. 2010). The Court may look beyond the pleadings and consider any evidence submitted to determine whether subject matter jurisdiction exists. *Long*, 182 F.3d at 554. If a federal court concludes that it lacks subject matter jurisdiction over an action, it must dismiss that action in its entirety. *See, e.g., Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

## III. Analysis

The Defendants argue that this action should not be in federal court, because the Plaintiffs cannot meet the $75,000 amount in controversy requirement for diversity jurisdiction.[1] They articulate three reasons for this: (1) the Plaintiffs would not gain any funds if they prevailed, (2) any EPA fines suffered by the Plaintiffs were they to lose this litigation would be collateral, and thus exempt from consideration in calculating the jurisdictional threshold under *Smith Prod. Co. v. Baldwin*, No. 96-1746, 1997 WL 34742 (7th Cir. Jan. 24, 1997) and (3) the "mere suggestion" that the Plaintiffs would incur costs if they were denied relief is not an adequate justification for conferring federal jurisdiction—i.e. the damages offered by the Plaintiffs are too speculative. In each respect the Court disagrees.

---

[1] The Defendants also argue that the Plaintiffs' initial disclosures under Federal Rule of Civil Procedure 26(a)(1)(A)(iii) are inadequate. DE 22-1 at 7. That is not a proper argument to make in a Rule 12(b)(1) motion, and thus it is not addressed here. It could, however, be raised in a motion for sanctions or a motion to compel disclosures.

### A. *The Proper Measure of Damages*

First, the Defendants argue that the Plaintiffs cannot meet the $75,000 requirement because they would not get any money if they prevailed, only the right to access the Property. But money does not have to change hands to meet the amount in controversy requirement.

Under the Seventh Circuit's "either viewpoint" rule, the Court looks to the "pecuniary result to either party which the judgment would directly produce" to determine if the jurisdictional limit is satisfied. *McCarty v. Amoco Pipeline Co.¸* 595 F.2d 389, 393 (7th Cir. 1979). In suits for equitable relief, this can be either the cost to a defendant (or the benefit that a defendant would have to forgo) to comply with the court's directive or the value of the relief to the plaintiff. *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 609 (7th Cir. 1997) (surveying acceptable means of meeting the amount in controversy requirement in equitable actions). When measuring the value of equitable relief to a plaintiff, the Court may consider harm averted as well as value gained. *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 347 (U.S. 1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation . . . . [Here, the] value of that right is measured by the losses that will follow from the statute's enforcement."); *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d at 609 (noting that plaintiffs could establish the value of an injunction in a price-fixing case by pointing to the present value of future cost savings).

So, while the court values equitable relief based on the pecuniary result to either party that it would directly produce, such a "pecuniary result" is not limited to the literal exchange of money. Rather, averted future losses may be used to calculate the value of equitable relief to a plaintiff. In this case, the Plaintiffs argue that they will face losses in the form of stipulated

penalties under the Decree and increased remediation costs if they do not receive the relief that they seek. This is a valid means of valuing equitable relief, and thus demonstrating the amount in controversy.

>    B.    *Collateral Damages*

Defendants also argue that any fines imposed by the EPA would be a "collateral" result of the denial of the relief sought by the Plaintiffs, and thus should not count towards the amount in controversy requirement. Essentially, they argue that even if averted future losses are a legitimate means of calculating the value of relief, the source of those losses is such that they should not be considered. To support their argument, they cite an unpublished Seventh Circuit decision, *Smith Prod. Co. v. Baldwin*, No. 96-1746, 1997 WL 34742, *2 (7th Cir. Jan. 24, 1997). Under *Baldwin*, "[t]he amount in controversy constitutes the pecuniary results that flow directly and with a fair probability from the litigation itself, not from collateral sources. 'Collateral sources' include *incidental consequences*, such as fines and expenses that a party may incur as a result of judgment." (citing (*Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 543 (3d Cir. 1995)) *Id.* (emphasis added). This argument suffers from two defects.

First, as noted above, the Plaintiffs do not rely on EPA-mandated fines exclusively to reach the jurisdictional threshold. Rather, they also indicate that remediation costs will increase if relief is denied. Any such damages would accrue directly to the Plaintiffs as a result of their inability to access the Property to perform the cleanup required by the Decree. So, even if the Defendants prevailed in this argument, it would not necessarily knock the Plaintiffs below the jurisdictional limit.

Second, the potential fines in this case are not collateral. *Columbia Gas*, the authority relied upon by *Baldwin*, is illustrative. That case involved a utility company seeking to enjoin a

5

defendant from dumping dirt and rock on its easement so that the utility company could continue to operate its pipeline on the easement. However, the utility company also argued that dirt and rock could compress the ground, potentially causing the pipeline to rupture and leak gas, which could result in damage or fines—and those potential fines, the utility company argued, should count towards the jurisdictional limit. *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 543 (3d Cir. 1995). The court disagreed, excluding the potential fines proffered by the utility company from its calculus, indicating that it would not consider damages from "collateral or speculative sources."

But the fines at issue here hardly come from a "collateral source." [2] On the contrary the specter of EPA fines appears to be well understood by all parties to this litigation. They are also a central feature of the Settlement Agreement, and appear to be the driving force behind this litigation. This was not the case in *Columbia Gas*, where the defendant's primary concern was its inability to operate its pipeline, and the prospect of fines was entirely incidental. Accordingly, the Court rejects Defendants' argument that the potential harm demonstrated by the Plaintiffs is collateral, and thus does not count towards the jurisdictional limit. So, the damages proffered by the Plaintiffs are an acceptable means of demonstrating the amount in controversy, and all that remains is to determine whether they exceed $75,000.

---

[2] The argument that damages are "speculative" is essentially an argument that Plaintiffs have not met their burden of proof, and thus is addressed in Part III.C below.

C.     The Amount in Dispute

If uncontested, the Court will accept the plaintiff's good faith allegation of the amount in controversy unless it "appear[s] to a legal certainty[3] that the claim is really for less than the jurisdictional amount." *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1218 (7th Cir. 1995). But, in cases like this, where a defendant disputes the plaintiff's allegation of the amount in controversy, the plaintiff must establish jurisdictional facts by a preponderance of the evidence. *McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009), *superseded by statute on other grounds*; *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014). "To satisfy [the preponderance of the evidence] burden, a party must do more than 'point to the theoretical availability of certain categories of damages.'" *McMillian*, 567 F.3d at 844 (quoting *Am. Bankers Life Assur. of Florida v. Evans,* 319 F.3d 907, 909 (7th Cir. 2003)). This is sometimes articulated in terms of requiring the Plaintiff to provide "competent proof" that the amount in controversy exceeds $75,000. *McNutt v. General Motors Acceptance Corp*., 298 U.S. 178, 189 (1936); *McMillian*, 567 F.3d at 844. Acceptable forms of proof include documentary or testimonial evidence of damages, factual examples from the immediate case, and cases similar to the immediate case. *McMillian v. Sheraton Chi. Hotel &*

---

[3] The Seventh Circuit appears divided on the issue of whether the "legal certainty" standard applies to equitable actions. *Compare Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 800 (7th Cir. 2003) ("Counsel's response invokes the principle that a case may be dismissed only if the court is certain that the plaintiff cannot recover the jurisdictional amount. This is the rule for damages actions, not for equitable actions.") (citations omitted), *with Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1218 (7th Cir. 1995) (determining whether the amount in controversy requirement had been met in an equitable action and noting that "[i]f uncontested, the courts will accept the plaintiff's good faith allegation of the amount in controversy unless it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.'"). But, this Court need not resolve this apparent conflict. Since Defendants contest the jurisdictional amount at issue in this case, Plaintiffs must prove that the amount in controversy exceeds $75,000 by a preponderance of the evidence. If they can do so, they will naturally also establish that it is not legally certain that there is less than $75,000 at stake. In short, the "legal certainty" language is only relevant in instances in which the jurisdictional limit is uncontested. If the jurisdictional limit is contested, then the party seeking to establish it is held to a higher standard and the "legal certainty" standard becomes irrelevant.

*Towers*, 567 F.3d 839, 844 (7th Cir. 2009), *superseded by statute on other grounds*; *see also Linck v. Tayler*, No. 2:11-cv-245, 2012 WL 464367, at *3–6 (N.D. Ind. Feb. 10, 2012).

Plaintiffs argue that they would incur two types of costs in excess of $75,000 if their motion for relief were denied. First, they argue that as times passes and they are unable to access the Property, the cost of EPA-mandated remediation will increase. They support this contention with an affidavit from Anthony Limke, who served as an environmental consultant during the EPA-mandated studies carried out by Plaintiffs pursuant to the Decree. DE 26-6 at 4. According to Mr. Limke, a delay in remediation could result in costs increasing from $100,000 to $400,000 per year. *Id*.

Second, Plaintiffs argue that they will be unable to perform remediation required by the Decree if they are unable to access the property, and thus will face stipulated penalties. To support this argument, Plaintiffs point to the text of the Decree itself and note that just 23 days after the date on which the EPA determines that they have violated the Decree, they will have already incurred over $75,000 dollars in penalties. DE 26 at 9–10; DE 26-7 at 31–36.

So, the Plaintiffs have met their initial obligation to provide evidence of an amount in controversy over $75,000. And the Defendants have presented absolutely no evidence to refute it. While they make a variety of legal arguments, they do not offer any evidence to counter the affidavit or Decree offered by the Plaintiffs. Consequently, this Court will accept the uncontroverted evidence offered by the Plaintiffs that, were relief denied, Plaintiffs would suffer in excess of $75,000. *See Gould v. Artisoft, Inc.*, 1 F.3d 544, 548 (7th Cir. 1993) (holding that making arguments as to the "speculative nature of the estimated share price cannot defeat federal jurisdiction in the absence of evidence suggesting a significantly lesser value"); *Enbridge Pipelines (Illinois) LLC v. Burris*, 2010 WL 1416019, at *3 (S.D. Ill. Mar. 31, 2010) *aff'd sub*

8

*nom. Enbridge Pipelines (Illinois) L.L.C. v. Moore*, 633 F.3d 602 (7th Cir. 2011) (finding an uncontroverted affidavit sufficient to establish the jurisdictional threshold); *cf. Macken,* 333. F.3d at 800 (affirming dismissal due to the plaintiff's failure to show through evidentiary support, or even a likelihood of obtaining that evidentiary support, satisfaction of the requisite amount in controversy).

### III. CONCLUSION

The Plaintiffs have established by a preponderance of the evidence that more than $75,000 is in controversy in this litigation. Therefore, the Defendants' motion to dismiss for lack of subject matter jurisdiction is **DENIED**.

SO ORDERED.

ENTERED: June 11, 2015

/s/ JON E. DEGUILIO
Judge
United States District Court